Appellee Cross Appellant by Randall Smith v. Civil Contractors, Incorporated v. Appellate Cross Appellant by Randall Smith v. Civil Contractors, Inc. and Northwest Illinois Construction Appellee by Jill Lewis. Thank you, Your Honor. David Miller for the appellant and plaintiff in this coverage case. May it please the court and the counsel, it's always a pleasure to be here and to argue before this court, and this case is no exception. I want to preface my discussion here by saying that this is a truly extraordinary set of legal enmeshments and the facts. I have seldom seen this much convolution, and to straighten it out in 15 minutes, I'm going to have to move with alacrity. As an overview, I would say that this case involves one insurance endorsement, three complaints, and three insurance carriers, and interwoven with that is a metaphor that I will get to in a moment. We are dealing with what is known as an additional insured endorsement, and this type of additional insured endorsement is what is identified commonly as a vicarious liability or imputed liability endorsement. The endorsement limits coverage to such person or organization as an additional insured only with respect to your liability, that's the name insured here, Northwest, which may be imputed to that person or organization. Now the three complaints, we have an original complaint which was filed in December of 2009, and that original complaint was against civil constructors, and as to civil constructors, consisted of one count alleging that civil constructors was guilty of direct negligence. Now as this court is well aware, cases go to verdict based upon the issues that are joined by the pleadings. So if you want to see what kind of outcome there may be in a case, you look to the pleadings, follow it through to their fruition. A second complaint or amended complaint was then filed in June of 2011, which was approximately 30 days after this suit for declaratory judgment under that endorsement was filed in Whiteside County. For the first time, that amended complaint contained a count which was designated vicarious liability. And why do you think that appeared there? Because the declaratory judgment action complaint that brings us here today said we've got an imputed liability endorsement which requires vicarious liability. In other words, Northwest must first be liable, and then for coverage, civil constructors must be liable based upon the imputation of that liability as per or through an agency type relationship. That complaint then led to a counterclaim in this case, and ultimately a motion for summary judgment, which was argued on December 8th of 2011. The amended complaint, as its predecessor, alleged that the liability of civil constructors was based upon civil constructors' own negligence. The trial court held that that complaint did not trigger coverage under the imputed liability endorsement because there were no allegations of agency from which an imputation could be made. Now here's where it really, really gets interesting. That decision was made on December 8th of 2011. On December 9th of 2011, counsel for civil constructors prepared what has proven to be the second amended complaint against his own client, which he sent to the plaintiff's lawyer, saying here, take a look at this. This is what we've got to file, obviously because the previous pleading did not allege vicarious liability. So we get to the second amended complaint, and the second amended complaint says vicarious liability and makes the conclusionary allegation that Northwest was the agent of civil constructors as the principal, or alternatively, that Northwest was the servant of civil lay constructors as the master. No factual allegations to support those conclusions of the law. At that point, the process starts up again. Civil constructors are saying, aha, now based upon this amended complaint which they drafted, they are entitled to say that coverage is triggered because now we have a complaint that does allege imputed liability. We responded by filing an affirmative defensive collusion saying, hey, you can't do this. You can't make up a complaint against your own client and give it to the plaintiff to try to trigger coverage. Collusion is a conspiracy between two or more persons for an illegitimate objective to prejudice a third person. And as this case, this court said in Williams v. Williams, and the Supreme Court said in the context of insurance coverage and waste management v. international surplus lines, it is improper for an insured to get together with the plaintiff to procure a pleading for the purpose of establishing coverage where there is no coverage otherwise. And you have to get back away from this to look at the actual facts and see what was going on. In the underlying case, as we argue in our brief, and there's a lot of really neat law that's involved in this area, as we point out, there can be no imputed liability coverage absent an agency relationship. An agency relationship has two components. First, the principal must be free from fault. Here are several constructors. Second, all of the fault that is involved must be that of the agent which is imputed vicariously to the principal so the principal is taking a hit solely because of the fault of the agent. And we go back all the way to comparative fault principles and contribution. And here we have admissions in the underlying case in the form of a third party complaint that was filed by civil constructors saying that they are entitled to contribution in the event that they're liable. Contribution means what? It means that we are liable for what we did and we want contribution from Northwest to the proportionate sense of Northwest fault. So that means you cannot and do not have the absolute freedom from fault on the part of the principal which is required for an agency relationship. The third party complaint also alleges that control over the project that was vested in Northwest, that Northwest did the supervision, Northwest did the control, Northwest had the right to control the manner, means, and methods of the work of Northwest's own employees. We also serve requests to admit on the plaintiff saying tell us, admit, that you have no facts here that would show that Northwest was an agent and civil constructors was the principal. The response we got back was objections, logically so, saying that agency is a question of law, not a question of fact, which the courts have always said, so that second amended complaint that simply contains the conclusions of the principal and agent does not allege any facts. And I defy the court to compare that pleading with its predecessors as they are found in our appendix to find any facts beyond the bold legal conclusions. So our position in the matter is that we don't have any pleadings which would trigger coverage because there is no potential for a coverage when you compare the imputed liability endorsement which requires vicarious liability to the facts which are alleged in the pleadings. The first complaint contains absolutely nothing, the amended complaint is likewise a cipher in that there is nothing that could set up imputed liability, and the second amended complaint contains only legal conclusions of the pleader. You have to bear in mind here also when focusing among the collusion that what we have is a contract between these parties, Northwest as the subcontractor, civil constructors as the general contractor, in which those parties say that the relationship is that of contractor and independent contractor. Now this court has said in Mossiaf v. Zerot in looking at the exact factual situation which exists when you are focusing upon section 414 of the restatement second of the torts, dealing with what's referred to as construction negligence liability. As this court said, we've got three classes here. First of all, we have the fact that there is no duty and no liability on the part of a contractor for the actual omissions of an independent contractor. Then secondly, we have principles of agency, which says that the negligence of the agent is imputed to the principle which is free from fault, and the principle is therefore liable because of the negligence of the agent. And then as this court said in Mossiaf, we've got the middle here, and that is section 414 of the restatement, which says that the contractor can be liable for the contractor's own direct negligence in the exercise of a control to the extent that the contractor is negligent. And that's what we have here in the first complaint, the amended complaint, and the second amended complaint. We have no facts that establish an agency relationship or any nexus from which the vicarious liability of Northwest might be imputed to civil constructors. Quite to the contrary, what we have here is a collusive attempt to manufacture coverage by the attorney for civil constructors acting against his own client's interest in the case in proposing that the plaintiff file a complaint which is against his own client's interests and against the language of the contract to say, hey, Northwest is an agent and not an independent contractor. I hate to think what the client would say if the workers' comp claims then came in under section 183 of the Workers' Compensation Act. We submit here that this is just, plain, and fundamentally wrong, and it's also wrong per this Court's decision in Allen v. Peoria Park District to come up with a complaint when you have no factual allegations whatsoever to support it, particularly when it's for an illegitimate end. Some of the, I mean, they say that they maintain control over operative details of work or something. I mean, some of that is, are facts. I mean, they aren't mere conclusions. I mean, they talk about, you know, operative details of the work, the fact of that being a subcontract. I mean, some of that's not just a conclusion. I mean, aren't we really supposed to take a liberal look at these things? Not the operative facts have been held. That, in and of itself, is a legal conclusion and has been going back to the days of the old Structural Work Act. And we cite the Van Dekkerhoff v. City of Heron case, and we also set forth in our reply brief exactly the allegations that the cases say have to be in the pleading if you are going to show a control, let alone the type of control and the magnitude of control that might create an agency relationship. Being in control of the operative details, operative details are nothing more than a conclusion. They tell you nothing more than the phrase or term agency or servant. Now, in my concluding remarks, what we... How deep does the optimization have to take? What? How deep should the optimization be? We set that forth in our reply brief, and I was looking at it, and I think flagged it out here on the pages 23 and 24. And on 23, the type of allegations to establish control under Section 414 traditionally are, and we set forth eight cases. That the defendant initiated and maintained and supervised safety procedures, designated and provided a safety representative, had authority to stop the work, participated in coordinating the work that was present on the job site, designated various work methods, checked work progress, scheduled the work, ordered changes in the work, had authority to stop or refuse the work. Those are itemizations that you've taken out of the cases. Yes, yes. I went through and said, you know, somebody wants to know what facts can be alleged or have been alleged traditionally. Those are examples where cases, particular cases, you sort of lump them all together and then you lump the cases together, but those are all particular cases that mention some of these items. That is. You don't have to have all of them, but those are examples of things the courts have found to indicate. And then on page 24, this court's opinion in Morrissey F. V. Roth's building at 369 3rd and 351, as this court said, the restatement and case law find control under the following circumstances. One, the defendant supervises the entire job and effects the means and methods of the subcontractor's work, preventing the subcontractor from working in his own way and or is consistently present on the job site, directing operative detail of the subcontractor's work or supervises the entire safety program or fails to prevent subcontractors from doing the details of the work and so forth. And I have lectured on the subject of section 414 and written a number of articles. You also look to the contract to see what the contract language is in establishing the relationship of the parties, and here the contract wouldn't be clearer than it is contractor and independent contractor. There is no basis here to imply an agency relationship of any sort. There's no indication of a joint venture. No, no indication of a joint venture, and I'm quite aware of those. I mean, litigated a number of joint venture matters, in which case this was a joint venture, then civil constructors would be entitled to the same workers' comp immunity that Northwest has. There are three insurance companies here, United Fire, saying, hey, we sold, and the record demonstrates a specific endorsement at a specific price, which covered a specific risk, just like buying a Chevrolet, and they're trying to make this into something which it is not. Then we have the insurance company for civil constructors that is trying to torture this endorsement, pound the square peg into a round hole to make it something which it isn't so they don't have to pay, and then we've got the employer here under its employer's liability policy, saying they don't want to pay under the employer's liability policy because they want to take advantage under Monshine versus Power construction of the payments by United Fire as a credit. I'll be back. Any other questions? Thank you, Mr. Potter. Mr. Slade, do you want to take ten minutes? Yes, sir. Good afternoon. My name is Randall Slade. I represent Civil Constructors. Here's the court, counsel, counsel. I want to take this kind of back to the very beginning, before there was ever a declaratory judgment action, before there was even an underlying lawsuit. There was a construction project up in Morrison, Illinois. Civil Constructors was hired by the Illinois Department of Transportation to perform this construction project, which involved two phases, a bridge phase and a road-widening phase. Civil subcontracted with Northwest to perform the road-widening phase of the project. The Civil Northwest subcontract included a provision stating that Civil should be named as a primary additional insured on Northwest's insurance policy. The contract also included an indemnity provision for all claims arising from the performance of the subcontract work to the extent of the negligence attributed to the subcontractor Northwest. Now, these are very common provisions in construction contracts. A general contractor does not want to be held liable for something its subcontractor does and does not want to have to defend a lawsuit based on something its subcontractor has done. Now, in this case, Northwest's insurer was United Fire and the additional insured endorsement states that Civil is an additional insured with respect to liability that may be imputed to Civil arising out of Northwest operations performed for Civil. Now, unfortunately on this project, a young man named Michael Holloway was working as a flagger on the road. He was struck and killed by a truck driven by a subcontractor of Northwest, a company called E.H. Stralow, Inc. The plaintiff's counsel filed an original complaint naming Civil and Stralow as defendants. There was a single count for negligence. It was not titled direct negligence. It was simply titled negligence and it listed out a variety of acts that the plaintiff considered negligent. As counsel mentioned, there was also an amended complaint that added a specific count against Civil constructors titled vicarious liability. And then a second amended complaint which added specific actions of Northwest for which the plaintiff is seeking to hold Civil liable. For example, Northwest failed to require that its subcontractors had a working reverse alarm on their truck. Now, also as part of this lawsuit, there are third-party complaints. Third-party complaints filed by Civil, also a third-party complaint filed by Stralow. Both those third-party complaints are against Northwest Illinois construction. Both third-party complaints contain several allegations of acts of negligence on the part of Northwest. So in this case, the ultimate question if you look at the additional insured endorsement is, is it possible that Northwest liability could be imputed to Civil constructors? If it's could, if it's possible, there has to be a duty to defend. Now, in terms of vicarious liability, in the construction negligence context, we look at Section 414 of the restatement. That governs construction negligence claims. And Comment A to Section 414 addresses claims of vicarious liability. Now, the first sentence I think is very important here. It states, if the employer of an independent contractor retains control over the operative detail of the work, he is subject to liability for the negligence of the employees of the contractor. If you look at the courts in this state, in the Moiseyev case, they addressed the type of control that would be needed to get to liability under Section 414. One of the factors that this court found established control was where the general contractor supervises the entire safety program. Now, why is that important? That's important because in the underlying case, while all this was going on, prior to the filing of the Second Amendment complaint, civil constructors filed a motion for summary judgment. And that motion for summary judgment was fully briefed in front of the Honorable Michael Albert. And in that motion for summary judgment, particularly in the response brief to that motion, plaintiff's counsel indicated he intended to argue that civil was liable under both a direct theory of negligence and under a vicarious liability pursuant to Section 414. At hearing on that motion, Judge Albert found that a question of fact remained as to whether the contract between civil and Northwest gave civil enough control over the safety program that could potentially create a scenario where there could be vicarious liability against civil constructors. What were the salient underlying facts that would give rise to that? It was based on the Northwest civil constructors contract. Specifically, the judge also relied upon the primary contract between IDOT and civil. What items in the contract? They're cited in our brief in full, but paragraph 3.14.9 of the subcontract was the critical factor that states, this is in the subcontract, mind you, Northwest civil, that provision states prevention of accidents at the site is the responsible of civil constructors, Inc. of Illinois subcontractor. So it's that sentence right there that does it. That is what Judge Albert found. We argued against that, and Judge Albert disagreed with our argument and found that a question of fact suitable for a jury existed as to whether civil had control of the worksite sufficient that liability could arise against it under section 4.14. Now, counsel has made a lot of the fact that the contract itself uses the phrase independent contractor, but if you look at the Lawler case, which we cited, the Illinois Supreme Court essentially said that the label on the contract doesn't matter. You have to go beyond the contract when determining whether there can be a finding of vicarious liability. Going back again to comment A, in section 4.14 specifically uses the phrase independent contractor. So that label alone is not the end of the question. If you look at some of the cases, not in this district, but outside this district, that discuss 4.14 liability, they also make the same argument that just because there's language in a contract saying one thing, you have to look at the entirety of the circumstances. Thank you. Now, I want to quickly jump to this issue of collusion in that my firm and myself have done something against the interests of my client. What my client wants is the insurance coverage for which it contracted. This is the specific type of situation in which civil constructors wanted a defense from Northwest, in which an accident occurred on Northwest portion of the project, and in which civil constructors has been sued. Now, plaintiff has also made arguments about the Contribution Act and how that means that there can never be liability imputed to civil, in this case, based on the acts of Northwest. That's simply untrue. The fact of the matter is that there will be a determination of civil's liability to plaintiff, independent of whether or not civil can recover from Northwest. If Northwest goes bankrupt tomorrow, has no assets, has no insurance, and whatnot, and civil gets hit with a 30% at trial, 30% fault, and Northwest is found 70% at fault, guess what? We're on the hook for the entire 100%. The other obvious reason that there's a problem with that logic is it essentially creates illusory coverage. If the existence of the Contribution Act by itself creates a scenario where any time you're in a construction negligence lawsuit and these contractors can sue each other in contribution and get the fault apportioned to their specific blame in the case, then this additional insured endorsement provides no coverage, provides no benefit to Northwest, and certainly provides no benefit to civil. In short, I would ask the courts to look. There's a lot of cases in here. I know you've all read the briefs. But I think this is a case where if you look at, in particular, the underlying complaints, you look at the third-party complaints filed by civil and filed by STRALO, look at the fact that there was a motion for summary judgment in which the judge found a question of fact existed as to whether civil had control on the job site, the obvious conclusion is that there has to be a duty to defend under this insurance policy. Thank you, Mr. Steinberg. Ms. Lewis. May it please the Court, Mr. Miller, Mr. Steinberg. My name is Jill Lewis, and I represent Northwest Illinois Construction. The underlying accident was horrific, and I'm telling you this because the potential liability in the underlying case is huge. That is why Northwest has an independent interest in obtaining coverage for civil, because if we can obtain coverage for civil under the United Fire policy, then our potential contribution liability is greatly affected under the Monshine case and its progeny. That is why the trial court denied United Fire's motion for summary judgment, saying that Northwest lacks standing. We do have standing. United Fire has admitted that we were not involved in any way in the collusive activity. So independent of the collusion argument, there is coverage for civil that Northwest argues this court affirm the summary judgment of the trial court and find that there was a duty to defend and indemnify civil because United Fire should be stopped due to their failure to file a DEC action in a timely manner. And I think that has been lost thus far in this argument. So I want to point out that United Fire was tendered this lawsuit, and in fact they had appeared for Northwest Construction originally, and then we substituted in, my firm did. And then they took over this DEC action, or before they filed the DEC action, they took over the coverage issue. But they sat on it, and they sat on it for 15 months, letting civil just fend for itself with its insurance carrier, whether or not their insurance carrier was picking it up, I have no idea. But they had taken the position that coverage was denied, there were no allegations, even though they had. They had all the third-party complaints, they had all the subcontracts, they had everything. They know the case law. They know that under 414 there can be vicarious liability. The Supreme Court just in 2010 in the Wilson case held that the allegations in a complaint are not what necessarily trigger the duty to defend, because if we based it on that, we'd be basing it on the whims and draftsmanship of a plaintiff. And we're not going to do that. We're going to look at, is there a possibility for coverage? Encasco talks about that. Pekin v. Hallmark talks about that. And there is no way, if you look at the original complaint, the amended complaint, which has a vicarious liability count in it, that United Fire, under any way, shape, or form, could say absolutely no possibility. And you know why? By virtue of the fact that they filed the deck action, they are acknowledging that maybe there was a possibility of coverage all along. And so we want a court to help us out here. By then it was too late, and the trial court properly found that 15 months was too late, and they were stopped. I would ask that this court affirm the trial court's ruling that United Fire had a duty to defend and is now stopped by virtue of failing to timely file a deck action and thus owes a duty to indemnify civil in the Holloway lawsuit. Thank you, Mr. and Mr. Miller. Thank you, Your Honor. I will be brief in responding. As we set forth in our brief, Section 414 does not create vicarious liability. In fact, Comment A says that if you have vicarious liability, it is under the law of agency with a capital A, which deals with the relation of master and servant, or under the principles of the agency involving the agent and the principal. So we are not dealing with a Section 414 claim unless you get to master-servant, agent-principal. And that's what they have been trying and trying and trying to do by amended pleadings that allege no facts. We have to look at it realistically. As counsel said, why, we can have a third-party complaint. Here the third-party complaint is verified. It is a judicial admission on their part that the control over the work was vested in Northwest. Why? Because they're seeking to recover contribution from Northwest. And you can't have contribution in an agency relationship. Agency is indemnification because contribution presupposes that you're obligated to pay more than your fair share, which presupposes that you have a share of the fault. So that is not a principal or a master who is without liability. It is interesting that counsel for Northwest raises the Monsheen case to shield the Northwest. What's happening is, as I indicated, the insurance carrier, the liability, the employer liability carrier for Northwest doesn't want to pay and wants to stand behind the United Fire policy. What we have here is a coverage, and the record is undisputed, that this is a coverage which is separate and distinct from an arising out of coverage, which says that we will indemnify you for any liability you have arising out of our work. The premium is different. It is rated differently, and you can't take this product and turn it into something else by legal ledger domain to say that a duck is a hawk or something else. This is not the type of endorsement which can be converted by a clever pleading or even not so clever pleading. I want to point out to the court that I became involved in this case and argued the motion for summary judgment as to the amended complaint. Take a look at the original complaint. There is absolutely no basis, and all of the cases that we cite say there is no basis in that pleading to infer a potential for imputed liability. It is simply stated a direct liability, a claim. And I argued the motion for summary judgment against this successfully with the trial judge saying there are no allegations in the amended complaint, although captioned vicarious liability, pursuant to which the liability of Northwest could be imputed to civil constructors. The intriguing thing here, and while I really like the trial judge, I believe that he missed this one by a mile, because he said at the time of the amended complaint, in that summary judgment motion, the language of the amended complaint does not show a potential for imputed liability, and therefore does not trigger a coverage. And yet, despite the fact that in December of 2011 the pleading didn't say that, he went back and found an estoppel based upon the earlier pleading, which contained absolutely no facts, legal conclusion or otherwise, that could support the vicarious liability. What we ask is that the summary judgment be reversed as to the estoppel, it be reversed as to the duty to defend under the second amended complaint, and that the case be remanded for further proceedings consistent with the opinion of this court. Thank you. Thank you, Mr. Miller. Are you going to respond then, Mr. Slater? Yes. Okay. Okay. Thank you. Five minutes. Okay, thank you. I'll just be very brief. Counsel keeps going back to the original complaint, what it does and does not allege. Under the Wilson case, we know we can look beyond the original complaint. We can look at all the information United Fire had in its possession. We can look at the Stralow complaint, the third-party complaint filed by E.H. Stralow. That mitigates the concerns in piquing the United contractors about a party filing its own third-party complaint and trying to get vicarious liability that way. E.H. Stralow doesn't care whether or not civil constructors prevails in this declaratory action, and they've alleged in their third-party complaint that Northwest was negligent on the job site. That distinguishes this case from the cases relied upon by a plaintiff in which there are no allegations of negligence by anyone of any sort against the employer. In this case, we have allegations from E.H. Stralow. We have allegations from civil constructors. And we also, you know, you do the math. If the third-party complaint of a co-defendant is alleging that the employer is negligent, it doesn't take a huge leap of logic to figure that the plaintiff is also going to be pursuing a theory under 414 vicarious liability, particularly when in the amended complaint, there is an entire count labeled vicarious liability. And as the courts have said, we can't rely upon the whims of the drafter in this case. It was inartfully drafted, but it's clear that plaintiff is trying to seek and hold civil constructors liable for the acts of its subcontractor, Northwest, on the Route 30 Bridge project in Morrison, Illinois. That's been true from the day this lawsuit was filed. That has been true from the date in January 2010 in which this lawsuit was tendered to United Fire. And that has been true through the motion for summary judgment in which Judge Albrecht found there was a question of fact as to whether civil constructors could be held vicariously liable. And it's still true today as civil constructors continues to expend defense costs in defending this lawsuit, which has high exposure to all defendants. So for these reasons, we think there is clearly a duty to defend under each of the complaints filed in the underlying case, the original complaint, the amended complaint, and the second amended complaint. Thank you. Thank you. Thank all of you, in fact, for your argument today. We will take this matter under advisory. Thank you. A very, very interesting case. And we will try to get back to you with a written disposition as soon as we can. Thank you very much. Court is now in recess.